# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

LOGITECH INC., a California corporation doing business in California; LIFESIZE, INC., a Delaware Corporation; and DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ROBERT MACKINNON, an individual,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

MAR 30 2015

CLERK OF THE SUPERIOR COURT
By Amani Barnes
Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* René C. Davidson Courthouse

CASE NUMBER: RG15764451
*(Número del Caso)*

1225 Fallon Street
Oakland, California 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kelly Armstrong, The Armstrong Law Firm APC, 302 Caledonia St, #4, Sausalito, CA 94965, 415-331-4400

DATE: 3/30/2015    Leah T. Wilson    Clerk, by Amani Barnes, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Lifesize, Inc.

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kelly Armstrong (SBN 213036)/Michael Levy (SBN 269066)<br>The Armstrong Law Firm, APC<br>302 Caledonia Street, Sausalito, CA 94965<br>TELEPHONE NO.: (415) 331-4400     FAX NO.: (415) 331-4407<br>ATTORNEY FOR *(Name):* Plaintiff Robert MacKinnon | ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>MAR 30 2015<br><br>CLERK OF THE SUPERIOR COURT<br>By Ameen Barnes<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: René C. Davidson Courthouse

CASE NAME:
MacKinnon v. Logitech, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG15764451 |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount demanded exceeds $25,000)    (Amount demanded is $25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☑ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties        d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel  e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence            f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 2
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 3/30/15
Kelly Armstrong
(TYPE OR PRINT NAME)                                                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

KELLY ARMSTRONG (SBN 213036)
MICHAEL A. LEVY (SBN 269066)
**THE ARMSTRONG LAW FIRM**
A Professional Corporation
302 Caledonia Street, Suite 4
Sausalito, California 94965
Telephone (415) 331-4400
Facsimile (415) 331-4407
kelly@thearmstronglawfirm.com

Attorneys for Plaintiff
ROBERT MACKINNON

ENDORSED
FILED
ALAMEDA COUNTY

MAR 3 0 2015

CLERK OF THE SUPERIOR COURT
By Amani Barnes
Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ALAMEDA

ROBERT MACKINNON, an individual,

        Plaintiff,

vs.

LOGITECH INC., a California corporation doing business in California; LIFESIZE, INC., a Delaware Corporation; and DOES 1-50, inclusive,

        Defendants.

Case No. RG15764451

**COMPLAINT FOR DAMAGES:**

(1) WRONGFUL TERMINATION/ ABUSIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY; and
(2) DEFAMATION

**DEMAND FOR JURY TRIAL**

**PUNITIVE DAMAGES SOUGHT**

COMPLAINT

Plaintiff alleges as follows:

## INTRODUCTION

1. This is an action for damages as to: (1) Wrongful Termination/Abusive Discharge in Violation of Public Policy; and (2) Defamation.

2. This action arises out of events involving Plaintiff ROBERT MACKINNON and Defendants LOGITECH INC., a California corporation; LIFESIZE, INC., a Delaware corporation; and DOES 1-50.

## THE PARTIES

3. Plaintiff ROBERT MACKINNON (hereinafter "Plaintiff" or "MACKINNON") is informed and believes and thereon alleges that LOGITECH INC. (hereinafter referred to as "LOGITECH") was at all times relevant herein a corporation doing business in California and headquartered in California. Plaintiff believes and thereon alleges that LIFESIZE, INC. has been doing business in California since it was incorporated on October 10, 2014.

4. Plaintiff is informed and believes and thereon alleges he was employed in Maryland by Lifesize Communications, Inc. from approximately July 2007 to December 11, 2009. Lifesize Communications, Inc. was acquired by LOGITECH in 2009. Plaintiff is informed and believes and thereon alleges he was employed in Maryland by LOGITECH from approximately December 11, 2009 through January 2, 2015. Plaintiff is informed and believes and thereon alleges he was employed in Maryland by LOGITECH and LIFESIZE as joint employers from approximately October 10, 2014 through January 2, 2015.

5. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50, and therefore sues them by such fictitious names. Plaintiff is informed and believes and thereon alleges that said Defendants are in some manner legally responsible for the activities and damages alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

6. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants were acting as the partner, agent, servant, and employee of

1. each of the remaining Defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining Defendants.

## JURISDICTION

7. This Court has personal jurisdiction over LOGITECH because it is a California resident, it is headquartered in California, it is a California corporation, it transacts a substantial amount of business in California, and the tortious acts LOGITECH is herein alleged to have committed against MACKINNON occurred substantially in California, including but not limited to LOGITECH's California-based personnel ratifying the tortious conduct of LIFESIZE.

8. This Court has personal jurisdiction over LIFESIZE because it transacts a substantial amount of business in California, the tortious acts LIFESIZE is herein alleged to have committed against MACKINNON occurred substantially in California, and the tortious acts of LOGITECH that LIFESIZE aided and abetted occurred substantially in California.

## VENUE

9. Venue is proper within the County of Alameda because LOGITECH resides in the County of Alameda and a substantial part of the events or omissions giving rise to the claim occurred in County of Alameda.

## GENERAL ALLEGATIONS

10. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

11. In July 2007, Lifesize Communications, Inc. employed MACKINNON as the Eastern United States Channel Manager. MACKINNON performed well, and in January 2008, Lifesize Communications, Inc. promoted him to Regional Sales Manager.

12. In January 2009, MACKINNON was partnered with Bill Drucis (hereinafter "DRUCIS") as the sales team for the newly formed Mid-Atlantic Territories. Over the next several years, MACKINNON and DRUCIS exhibited excellent work performance and sales numbers. They were recognized in 2009 as members of Lifesize Communication, Inc.'s Circle of Excellence; received the Top Gun award in 2010 for having the highest performing territory

in the Americas and obtaining 120% of their sales quota; and were recognized for the Best Overall Performance in the Eastern United States in 2011.

13. On December 11, 2009, MACKINNON became an employee of LOGITECH. Lifesize Communications, Inc. was acquired by LOGITECH. LOGITECH began operating the Lifesize business as a division of LOGITECH.

14. MACKINNON was promoted to Regional Account Manager for the Mid-Atlantic Territory in September 2011. Due to the growth in the territory, a third sales person, Chris Emminizer (hereinafter "EMMINIZER"), was added to the team. In March 2012, DRUCIS left the team. MACKINNON and EMMINIZER continued to do the work of three people while waiting for DRUCIS's replacement. EMMINIZER quit in October 2012, MACKINNON worked the territory alone yet still exceeded its sales quota at 119%. MACKINNON was then working with Bill Miller and Gordon Miller. In January 2013, MACKINNON was recognized as the top Lifesize Americas salesperson for in 2012 and he was given a $5,000 bonus in appreciation by Chief Executive Officer Colin Buechler.

15. In August 2013, after layoffs and some reorganization, the Mid-Atlantic Territory sales team consisted of MACKINNON, DRUCIS and Sophia McCulloch (hereinafter "MCCULLOH"). MACKINNON continued to excel with the new team. In July 2014, Matt Collier (hereinafter "COLLIER"), the Vice President of Sales for the Lifesize division of Logitech, thanked him "for all your efforts this past year!" In addition, COLLIER informed MACKINNON that he would be receiving a raise and be promoted to Senior Regional Sales Manager.

16. On October 6, 2014, the sales numbers were announced for the second quarter, July to September 2014. The Mid-Atlantic Territory was one of only four territories to exceed its quota, while three territories were 80% or below in their quotas. In order to increase sales, a sales contest was announced for the third quarter. In November 2014, MACKINNON announced that five territories had met the first threshold in the sales contest and remained eligible to win the contest. Not surprisingly, the Mid-Atlantic Territory was one of these high-performing territories.

17. On November 11, 2014, Craig Malloy (hereinafter "MALLOY"), the Chief Executive Officer for the Lifesize division of LOGITECH and the Chief Executive Officer of LIFESIZE, held a company-wide meeting. During the meeting he congratulated certain territories and individual team members, including MACKINNON, on exceeding their quotas for the second quarter. MALLOY also announced a plan to create a new corporation, LIFESIZE, INC., which would be largely owned by LOGITECH, but also give employees some ownership. In fact, LIFESIZE had already been incorporated in Delaware at the time this announcement was made. MALLOY told the Lifesize employees that they would be provided ownership in LIFESIZE in the form of restricted stock units by December 31, 2014. However, MACKINNON never received his restricted stock units as promised.

18. In early December 2014, DRUCIS forecasted that third quarter sales for the Mid-Atlantic Territory would meet 89% of its quota. The forecast was based in part on opportunities that MACKINNON, DRUCIS, and MCCULLOCH were currently working on. On the final day of the quarter, MACKINNON learned that the team sales would be lower than forecasted. MACKINNON's performance was not the cause of the lower-than-expected sales as he completed his pending deal on time. DRUCIS and MCCULLOCH, however, did not complete their deals as expected.

19. On December 30, 2014, DRUCIS held a team video conference with MACKINNON and MCCULLOCH. The team discussed some reorganization within the territory, and plans for an in-person team meeting in mid-January. DRUCIS neither raised any concerns regarding MACKINNON's performance nor did he discuss putting MACKINNON on a Performance Plan.

20. Lifesize Communications, Inc. had a policy of putting underperforming employees on a Performance Plan. The Lifesize division of LOGITECH, and LIFESIZE have a policy of putting underperforming employees on a Performance Plan. MACKINNON was never placed on a Performance Plan nor was he ever told he had performance issues. For example, during calls in December 2014 with DRUCIS, COLLIER, and Mark Brady

(hereinafter "BRADY"), LIFESIZE's Vice President of Sales for the East, no one told MACKINNON that they had concerns regarding his work performance.

21. On January 2, 2015, DRUCIS informed MACKINNON that he was being terminated due to his performance. MACKINNON was completely shocked by DRUCIS' statements against him. MACKINNON was an excellent employee and repeatedly exceeded his performance targets. The decision to terminate MACKINNON was made, in whole or in part, by LOGITECH employees in California. He exceeded his performance targets for the past seven years, including for 2014, and was one of the highest-paid sales representatives for LIFESIZE. In addition, executives COLLIER and BRADY both sent MACKINNON emails congratulating him on his excellent work. LOGITECH and LIFESIZE employees made false and disparaging remarks to third parties about MACKINNON's work performance, his competence to carry out the duties of his position, his professional appearance, and his professional conduct, including the false suggestion that he was unprofessional in his interactions with clients and sales prospects.

22. MACKINNON's individual performance in the Mid-Atlantic Territories was strong for the past several years. For example, MACKINNON was responsible for 56.8% of the team sales for the 2013 fiscal year and 64.4% of the sales for the 2014 fiscal year. After MCCULLOCH joined the team, MACKINNON's sales percentage dropped since he gave some of his territory to her. On December 1, 2014, MACKINNON emailed DRUCIS a breakdown of the individual sales by MACKINNON, DRUCIS and MCCULLOCH for the first half of fiscal year 2015. MACKINNON's individual sales remained the highest on the team with 44%, DRUCIS had 43% of the sales and MCCULLOCH had only 13% of the sales. MCCULLOCH is significantly younger than MACKINNON, and she was not terminated for poor performance.

23. After his termination, MACKINNON spoke with several employees in an attempt to ascertain the true reason for his termination. First, MACKINNON spoke with LIFESIZE's Chief Financial Officer, Michael Lovell (hereinafter "LOVELL"). However, LOVELL told MACKINNON there was nothing else LIFESIZE could do. MACKINNON then contacted the human resources department for LOGITECH. MACKINNON communicated

with Karen Droksy, LOGITECH's Vice President of Human Resources who works for LOGITECH in California, and Veronica Avila, a member of LOGITECH's human resources department in California. Ms. Avila looked into MACKINNON's termination and confirmed that he was being terminated for cause. In California, LOGITECH ratified the discriminatory decision to terminate MACKINNON's employment.

24. LOGITECH and LIFESIZE discriminated against MACKINNON because of his age. He was 52 years old when he was wrongfully terminated. In addition to MACKINNON, five other employees were terminated on or about January 2, 2014. Of these employees, most were over 40 years old.

25. LOGITECH and LIFESIZE terminated MACKINNON in order to prevent him from obtaining the Restricted Stock Units that he was promised.

26. LOGITECH and LIFESIZE are cultivating a work environment that encourages discrimination against older employees. For example, MALLOY recently gave an interview with National Public Radio ("NPR"). The interview shows how MALLOY, LOGITECH, and LIFESIZE are pushing out the "baby boomers" in favor of encouraging "millennials" to work for LIFESIZE. MALLOY was quoted as saying "People in my generation [baby boomers] will never be as comfortable and as up to speed with what's happening on social media and Web applications." When discussing the loss of baby boomer employees, MALLOY said that his company needs to change with the industry, even if that means leaving some people behind. Terminating MACKINNON's employment LOGITECH and LIFESIZE was part of MALLOY's strategy to push baby boomers out of LOGITECH and LIFESIZE. When the decision to terminate MACKINNON's employment was made, the decisionmaker was aware of and motivated by MALLOY's stated desire to retain younger employees and discard those over 40 years old.

27. MACKINNON was shocked at the abrupt manner in which he was informed that his employment was being terminated. MACKINNON was shocked and humiliated to learn that he was being accused of substandard work performance. Before that, he worked in the industry for 25 years and had never been fired.

28. MACKINNON has experienced significant emotional distress as a result of being terminated from his job at LOGITECH and LIFESIZE through present and ongoing.

## FIRST CAUSE OF ACTION
## WRONGFUL TERMINATION/ABUSIVE DISCHARGE
## IN VIOLATION OF PUBLIC POLICY
## AGAINST ALL DEFENDANTS

29. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

30. Plaintiff's wrongful termination from his employment with Defendants was based upon Defendants' violation of the Public Policy of the State of California as put forward in the Fair Employment Housing Act, the California Constitution, the Age Discrimination in Employment Act, and other statutes and provisions, and because it was motivated by Defendants' desire to interfere with Plaintiff collecting the Restricted Stock Units that he was promised. Plaintiff's wrongful termination from his employment with Defendants was an abusive discharge in violation of public policy of the State of Maryland because it was discriminatory based on age and because it was intended to interfere with his collection of the Restricted Stock Units to which he was entitled. Plaintiff's wrongful termination was in violation of the common law of the States of California and Maryland, as expressed in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and *Adler v. American Standard Corporation* (1981) 291 Md. 31.

31. As a proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer substantial monetary losses incurred; and has suffered and continues to suffer emotional distress in an amount according to proof at the time of trial.

32. Defendants, and each of them, did the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intent to injure Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. The acts complained of were known to, authorized and ratified by Defendants. Plaintiff is therefore

entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof at the time of trial.

## SECOND CAUSE OF ACTION
## DEFAMATION
## AGAINST ALL DEFENDANTS

33. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

34. Plaintiff is informed and believes that Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal publications of defamation, of and concerning Plaintiff's performance, internally within LOGITECH and LIFESIZE.

35. Plaintiff is informed and believes that these publications were outrageous, negligent, reckless, intentional, and maliciously published by Defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were published by Defendants, their agents and employees. Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

36. During the above-described time-frame, Defendants, and each of them, conspired to, and in fact did, negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to each other and to third persons, who had no need or desire to know. Those third persons to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendants, and each of them, and the community, all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

37. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. The defamatory publications include false statements

about MACKINNON's work performance, his competence to carry out the duties of his position, his professional appearance, and his professional conduct with clients and sales prospects.

38. Plaintiff is informed, believes and fears that these false and defamatory statements will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications.

39. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

40. None of Defendants' defamatory publications against Plaintiff referenced above are true.

41. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

42. Each of these false defamatory *per se* publications were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege, which Plaintiff denies existed, since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation.

43. Each of these publications by Defendants were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendants published these statements knowing them to be false, unsubstantiated by any reasonable

investigation and the product of hostile witnesses. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

44. The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendants, and each of them, published these statements, not with intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

45. As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

46. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice, and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.

47. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for

these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for relief as follows:

1. For general damages according to proof, however, no less than the jurisdictional limit of this court;
2. For special damages in amounts according to proof;
3. For exemplary and punitive damages in amounts according to proof;
4. For interest as provided by law;
5. For cost of suit incurred herein; and
6. For such other and further relief as the Court deems fair and just.

Dated: March 30, 2015            THE ARMSTRONG LAW FIRM

*/s/ Kelly Armstrong*
KELLY ARMSTRONG
MICHAEL LEVY
Attorneys for Plaintiff
ROBERT MACKINNON

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 30, 2015            THE ARMSTRONG LAW FIRM

*/s/ Kelly Armstrong*
KELLY ARMSTRONG
MICHAEL LEVY
Attorneys for Plaintiff
ROBERT MACKINNON



# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;
- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

### What Are The Advantages Of Using ADR?

- *Faster* – Litigation can take years to complete but ADR usually takes weeks or months.
- *Cheaper* – Parties can save on attorneys' fees and litigation costs.
- *More control and flexibility* – Parties choose the ADR process appropriate for their case.
- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.
- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program:** Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

- o **Private Mediation:** This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  - o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  - o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

## Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA  94702-1612
Telephone: (510) 548-2377    Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA  94550
Telephone: (925) 373-1035    Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA  94607
Telephone: (510) 768-3100    Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.