UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT MACKINNON,

    Plaintiff,

    v.

LOGITECH INC., et al.,

    Defendants.

Case No. 15-cv-05231-TEH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This matter comes before the Court on Defendants Logitech Inc. and Lifesize, Inc.'s motion to dismiss all claims in Plaintiff Robert MacKinnon's Second Amended Complaint ("SAC"). The Court found this matter suitable for resolution without oral argument, Civ. L.R. 7-1(b), and vacated the hearing scheduled for January 25, 2016. For the reasons set forth below, the Court now GRANTS IN PART and DENIES IN PART Defendants' motion.

**BACKGROUND**

Plaintiff Robert MacKinnon contends that he was employed in Maryland by Defendant Lifesize Communications, Inc. from July 2007 to December 11, 2009, when Defendant Logitech Inc. acquired Lifesize. He contends that he was employed by Logitech from December 11, 2009, until his termination on January 2, 2015, and that he was a joint employee of Lifesize and Logitech from October 10, 2014, to January 2, 2015.

MacKinnon alleges that he was a high-performing sales manager, receiving various awards and repeatedly exceeding performance targets. Nonetheless, he was terminated and was told that the termination was due to his performance. At the time of his

termination, there were three salespersons on his regional team: MacKinnon, Bill Drucis, and Sophia McCulloch. Although third-quarter 2014 sales for the region did not hit forecasts, MacKinnon contends that he completed his pending deals on time, but that Drucis and McCulloch did not. For the first half of fiscal year 2015, MacKinnon alleges that he had the highest individual sales on the team, with 44%; Drucis had 43%, and McCulloch had 13%. Although MacKinnon was terminated, McCulloch – who "is significantly younger" than MacKinnon, SAC ¶ 24 – was not. The complaint is silent as to whether Drucis was terminated.

MacKinnon asserts that his termination was based on age discrimination. "He was 52 years old when wrongfully terminated. In addition to MACKINNON, five other employees were terminated on or about January 2, 2015. Of these employees, most were over 40 years old." *Id.* ¶ 26. He further contends that "LOGITECH and LIFESIZE are cultivating a work environment that encourages discrimination against older employees," and that the CEO had a "strategy to push baby boomers out of LOGITECH and LIFESIZE." *Id.* ¶ 28.

MacKinnon pleads in the alternative that Defendants terminated him "to prevent him from obtaining the Restricted Stock Units that he was promised." *Id.* ¶ 27. This claim stems from MacKinnon's allegation that, on November 11, 2014, Craig Malloy, "the Chief Executive Officer for the Lifesize division of LOGITECH and the Chief Executive Officer of LIFESIZE, held a company-wide meeting" during which he "announced a plan to create a new corporation, LIFESIZE, INC., . . . .[and] told Lifesize employees that they would be provided ownership in LIFESIZE in the form of restricted stock units by December 31, 2014." *Id.* ¶ 19.

Finally, MacKinnon alleges that "LOGITECH and LIFESIZE employees made false and disparaging remarks to third parties about MACKINNON's work performance, his competence to carry out the duties of his position, his professional appearance, and his professional conduct, including the false suggestion that he was unprofessional in his interactions with clients and sales prospects." *Id.* ¶ 23.

2

On the basis of these allegations, MacKinnon asserts eight causes of action: (1) wrongful termination or abusive discharge in violation of public policy, under both California and Maryland law; (2) breach of implied contract; (3) breach of the implied covenant of good faith and fair dealing; (4) defamation; (5) unfair business practices in violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (6) age discrimination in violation of California's Fair Employment and Housing Act ("FEHA"); (7) failure to prevent discrimination in violation of FEHA; and (8) age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA").  Defendants have moved to dismiss the SAC in its entirety.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.2007).  However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.   ADEA

Defendants first move to dismiss MacKinnon's claim under the ADEA. To prevail on an ADEA claim, the plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Courts evaluate ADEA claims using the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). This framework requires the plaintiff to establish a prima facie case of discrimination, which then shifts the burden "to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.* (citations omitted). In a disparate treatment case such as this one, a prima facie case is established by showing that the plaintiff "was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)).

"A plaintiff in an ADEA case is *not required* to plead a prima facie case of discrimination in order to survive a motion to dismiss." *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012). Instead, a plaintiff need only "plead facts that are sufficient to state a plausible claim that but-for the alleged age discrimination," he or she would not have suffered the adverse employment action. *Brown v. Family Radio, Inc.*, No. C13-5305 PJH, 2014 WL 842385, at *2 (N.D. Cal. Feb. 28, 2014). However, "where a plaintiff pleads a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss." *Sheppard*, 694 F.3d at 1050 n.2.

1    Defendants do not dispute that MacKinnon has alleged that he is over the age of
2    forty, that he was performing his job satisfactorily, and that he was terminated. However,
3    they argue that MacKinnon's allegations that McCulloch, a younger employee, was not
4    also terminated are insufficient to state a plausible age discrimination claim. The Court
5    disagrees. While Defendants are correct that "Logitech could have had any number of
6    reasons for not terminating McCulloch," Reply 2-3, one of those reasons could plausibly
7    have been age discrimination. MacKinnon alleges that "the decisionmaker [regarding his
8    termination] was aware of and motivated by [the CEO's] stated desire to retain younger
9    employees and discard those over 40 years old." SAC ¶ 28. MacKinnon further alleges
10   that he was the best-performing salesperson on his team, and that his younger counterpart
11   was not terminated – thereby indicating that Defendants still required someone to perform
12   the functions of MacKinnon's job. This is sufficient to allege a plausible inference of age
13   discrimination, which "can be established by 'showing the employer had a continuing need
14   for [the employees'] skills and services in that their various duties were still being
15   performed . . . or by showing that others not in their protected class were treated more
16   favorably.'" *Diaz*, 521 F.3d at 1207 *Id.* (quoting *Coleman*, 232 F.3d at 1281).

17   Although MacKinnon elsewhere alleges that he was terminated because Defendants
18   did not want to pay him stock options – which, if true, would negate any conclusion that
19   age was the but-for cause of his termination – Federal Rule of Civil Procedure 8(d)(3)
20   allows a party to plead inconsistent claims. Thus, this alternate theory does not subject
21   MacKinnon's age discrimination claim to dismissal. *Brazill v. Cal. Northstate College of*
22   *Pharm., LLC*, 904 F. Supp. 2d 1047, 1051 (E.D. Cal. 2012) (noting a "consensus among
23   district courts finding that *Gross*'s application is limited to a plaintiff's burden of
24   persuasion and does not preclude a plaintiff from pleading alternate theories for an adverse
25   employment action").

26   Of course, it remains to be seen whether MacKinnon can actually prove that age
27   was the but-for cause of his termination, but he has alleged sufficient facts to support a

28

5

plausible conclusion that it was. Accordingly, Defendants' motion to dismiss MacKinnon's age discrimination claim is DENIED.

## II.   FEHA, UCL, and California Wrongful Termination

Defendants also move to dismiss MacKinnon's FEHA, UCL, and California wrongful termination claims on grounds that MacKinnon has failed to allege tortious conduct in California. MacKinnon does not contend that FEHA applies to protect out-of-state residents, like himself, from wrongful conduct that occurs outside California, nor could he. FEHA does not "apply to non-residents employed outside the state when the tortious conduct did not occur in California." *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996). Instead, MacKinnon's opposition is based solely on his contention that he has sufficiently alleged wrongful conduct that occurred in California.

To support this argument, MacKinnon points to only two paragraphs in the SAC: paragraphs 11 and 23. Opp'n at 10. Paragraph 11 pleads only that the venue provisions in Government Code section 12965 apply. SAC ¶ 11. This does nothing to allege tortious conduct in California. The only reference to California in paragraph 23 is the allegation that "[t]he decision to terminate MACKINNON was made, in whole or in part, by LOGITECH employees in California." Paragraph 25 of the SAC – which MacKinnon, inexplicably, failed to cite in his opposition despite Defendants' raising it in their moving papers – similarly alleges that, "[i]n California, LOGITECH ratified the discriminatory decision to terminate MACKINNON's employment."

These conclusory allegations of tortious conduct in California are insufficient to support a FEHA claim. In *Gonsalves v. Infosys Technologies, Ltd.*, the court considered similar conclusory allegations that, "[f]rom at least 2002 through 2008, Infosys by and through its executives, personnel and consultants in California instituted, ratified and affirmed unlawful, discriminatory, and retaliatory corporate policies," and "[f]rom California, Infosys personnel and consultants supported, participated in, and ratified Infosys' illegally discriminatory and retaliatory decision to demote, terminate, and refuse

6

to rehire Mr. Gonsalves." *Gonsalves*, No. C09-04112 MHP, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010). The court found these allegations insufficient because they failed to provide information "necessary to determine if the alleged discrimination suffered by Gonsalves had a nexus with California," such as who was responsible for the decision to demote and fire him, where those responsible individuals were located, and where the plaintiff was located when he was allegedly discriminated against. *Id.*

Another court previously reached a similar conclusion, finding it insufficient to allege "that the corporate officers named in the allegations ratified or participated in the challenged conduct," because this "only implies that they were employed in California and does not identify what actions, if any, they took in California." *Dodd-Owens v. Kyphon, Inc.*, No. C06-3988 JF (HRL), 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007). The court concluded that, "[i]f California-based employees participated in or ratified the alleged tortious conduct, the complaint must so state with specificity so that the Court can determine if these actions are sufficient to state a claim under FEHA." *Id*. *Dodd-Owens* was "not designated for publication," *id.* at n.1, but it was nonetheless followed by the *Gonsalves* court, 2010 WL 1854146, at *6.

The Court agrees with the reasoning in these cases and finds that MacKinnon has failed to allege sufficient tortious conduct in California. Defendants' motion to dismiss MacKinnon's FEHA claims is therefore GRANTED without prejudice. Because MacKinnon relies on these same conclusory allegations to support his non-FEHA claims under California law, those claims are also dismissed without prejudice.

### III.   Maryland Wrongful Termination

Defendants next move to dismiss MacKinnon's claim for wrongful termination under Maryland law. MacKinnon failed to respond to Defendants' arguments that the complaint fails to state a claim because it does not "'plead with particularity the source of the public policy' allegedly violated by [his] termination." *Terry v. Legato Sys. Inc.*, 241 F. Supp. 2d 566, 570 (D. Md. 2003) (quoting *Porterfield v. Mascari II, Inc.*, 142 Md. App.

7

134, 140 (2002)). He also implicitly acknowledged the insufficiency of the complaint by arguing that he "could amend his complaint to bring an *Adler* claim under Maryland law as a basis for his cause of action for wrongful termination in violation of public policy." Opp'n at 16. The Court makes no determination as to whether such a claim would be sufficient, but it does find it appropriate to GRANT Defendants' motion to dismiss the Maryland wrongful termination claim without prejudice, so that MacKinnon can attempt to amend it as requested.

## IV. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Next, Defendants move to dismiss MacKinnon's claims for breach of contract and breach of the implied covenant of good faith and fair dealing on grounds that MacKinnon "does not adequately allege the existence of an enforceable implied contract." Mot. at 18. In opposition, MacKinnon does not cite to the complaint with any particularity, but the Court's review of the complaint reveals that MacKinnon alleges that, on November 11, 2014, the CEO of the company told "Lifesize employees that they would be provided ownership in LIFESIZE in the form of restricted stock units by December 31, 2014." SAC ¶ 19. MacKinnon alleges that "Defendants' statements that Plaintiff would receive stock in LifeSize, Inc. if he continued to work for Defendants constituted an offer, which Plaintiff accepted by performance, creating a binding implied contract." *Id.* ¶ 37.

However, as Defendants correctly observe and MacKinnon does not dispute, a contract cannot be "so uncertain and indefinite that the intention of the parties on material questions cannot be ascertained." *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 552 (N.D. Cal. 2012) (citing *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993)). MacKinnon's allegations fail to meet this standard because, for example, he does not allege how many stock units he was to receive, or how long he had to work to receive them. Consequently, the Court GRANTS Defendants' motion to dismiss MacKinnon's contract claims with leave to amend.

8

## V. Defamation

Defendants next move to dismiss MacKinnon's defamation claims for lack of specificity. Defamation requires "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal quotation marks omitted). "[A]lthough a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004). A plaintiff must also "specifically identify who made the statements, when they were made and to whom they were made." *PAI Corp. v. Integrated Sci. Solutions, Inc.*, No. C-06-5349 JSW (JCS), 2007 WL 1229329, at *9 (N.D. Cal. Apr. 25, 2007).

In this case, MacKinnon alleges that "Defendants, and each of them" published defamatory statements, SAC ¶ 47, including:

> false statements about MACKINNON's work performance, his competence to carry out the duties of his position, that he was to blame for his team not reaching its quota, his professional appearance in that he did not wear appropriate business attire, and his professional conduct, including the false suggestion that his interactions with clients and sales prospects were unprofessional and discourteous like a 'used-car salesman,' and the false suggestion that he was disruptive and talked over colleagues.

*Id.* ¶ 49; *see also id.* ¶ 23 (alleging that "LOGITECH and LIFESIZE employees made false and disparaging remarks to third parties" on these same topics). He alleges that these statements were made to "third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time." *Id.* ¶ 51.

Some of these allegations are specific enough to plead the substance of the allegedly defamatory statement – e.g., that MacKinnon "was disruptive and talked over colleagues" – while others are not – e.g., "statements about MACKINNON's work performance." However, MacKinnon fails to identify who made any of the alleged

9

statements, when they were made, or to whom they were made. This is fatal to his defamation claim, and the Court therefore GRANTS Defendants' motion to dismiss this claim without prejudice.[1]

**VI.   Claims Against Defendant Lifesize, Inc.**

Finally, Defendants move to dismiss the ADEA, FEHA, and wrongful termination claims against Lifesize, Inc. on grounds that Logitech, and not Lifesize, was MacKinnon's employer. MacKinnon does not dispute that these claims require an employer-employee relationship but does contend that Logitech and Lifesize were both his employers.

However, MacKinnon points to nothing in the complaint that alleges joint employment, and the only allegation that appears to do so is the conclusory allegation that MacKinnon "was employed in Maryland by LOGITECH and LIFESIZE as joint employers from approximately October 10, 2014 through January 2, 2015." SAC ¶ 4. This is a mere legal conclusion that is not sufficient to satisfy MacKinnon's pleading requirements:

> Whether two entities are "joint employers" is a legal conclusion that, under California law, "depends on a factual inquiry into the 'totality of the working relationship of the parties.'" While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege *some* facts in support of this legal conclusion.

*Hibbs-Rines v. Seagate Techs., LLC*, No. C08-05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009) (citation omitted). MacKinnon has failed to allege any such facts, and the Court therefore GRANTS without prejudice Defendants' motion to dismiss these claims.

//
//
//

---

[1] Defendants moved to dismiss the claim in its entirety. The Court therefore declines to evaluate each allegedly defamatory statement separately.

10

**CONCLUSION**

For the above reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to MacKinnon's ADEA claim against Defendant Logitech and GRANTED without prejudice in all other respects. MacKinnon may amend all claims dismissed without prejudice no later than **March 3, 2016**. Failure to file a timely amended complaint will result in dismissal of such claims with prejudice.

IT IS FURTHER ORDERED that the February 22, 2016 case management conference is continued to **May 9, 2016, at 1:30 PM**, which is after the deadline for the parties to complete mediation. The parties shall file a joint case management conference statement on or before **May 2, 2016**. If the parties believe an earlier case management conference would be productive, they may contact the Court's courtroom deputy to request a date.

**IT IS SO ORDERED.**

Dated: 02/11/16

_____
THELTON E. HENDERSON
United States District Judge

11