UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT MACKINNON,

    Plaintiff,

v.

LOGITECH INC., et al.,

    Defendants.

Case No. 15-cv-05231-TEH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

This matter came before the Court on May 16, 2016, on Defendants Logitech Inc. and Lifesize, Inc.'s motion to dismiss portions of Plaintiff Robert MacKinnon's Third Amended Complaint ("TAC"). For the reasons set forth below, the Court now GRANTS IN PART and DENIES IN PART Defendants' motion.

**BACKGROUND**

Plaintiff Robert MacKinnon contends that he was jointly employed by Defendants Logitech Inc. and Lifesize, Inc., and that he was terminated by both companies on January 2, 2015. He asserts that he was terminated either because of age discrimination or because Defendants did not want to pay him restricted stock units that he contends he was promised at a company-wide meeting on November 11, 2014.

Defendants previously moved to dismiss all claims from the Second Amended Complaint ("SAC"). On February 11, 2016, the Court granted Defendants' motion except as to MacKinnon's claim against Logitech under the federal Age Discrimination in Employment Act ("ADEA"). All other claims were dismissed without prejudice, and MacKinnon filed a timely amended complaint.

Defendants now move to dismiss with prejudice all claims from the TAC except for three claims against Logitech: the ADEA claim, the Maryland wrongful termination claim, and the Maryland age discrimination claim. The Court addresses each argument in turn below.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

**I.    FEHA, UCL, and California Wrongful Termination**

The Court dismissed MacKinnon's Fair Employment and Housing Act ("FEHA"), unfair competition law ("UCL"), and California wrongful termination claims from the SAC because MacKinnon, who worked in Maryland, failed to allege sufficient tortious conduct in California. *See, e.g., Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850,

2

1860 (1996) (holding that FEHA does not "apply to non-residents employed outside the state when the tortious conduct did not occur in California").

The SAC contained only conclusory allegations of tortious conduct in California: that "[t]he decision to terminate MACKINNON was made, in whole or in part, by LOGITECH employees in California," SAC ¶ 23, and that, "[i]n California, LOGITECH ratified the discriminatory decision to terminate MACKINNON's employment," *id.* ¶ 25. The SAC also alleged that MacKinnon communicated with two Logitech human resources employees in California, and that one of those employees "looked into MACKINNON's termination and confirmed that he was being terminated for cause." *Id.* The Court found these allegations to be insufficient, citing *Gonsalves v. Infosys Technologies, Ltd.*, No. C09-04112 MHP, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010), and *Dodd-Owens v. Kyphon, Inc.*, No. C06-3988 JF (HRL), 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007). The Court observed that MacKinnon failed to allege, for example, who was responsible for the decision to fire him, where those responsible individuals were located, and where MacKinnon was located when he was allegedly discriminated against.

The TAC repeats the conclusory allegations that the decision to terminate MacKinnon was made and ratified in California, and his counsel repeatedly relied on those allegations at oral argument. However, the Court already found these vague allegations to be insufficient to state a claim. Likewise, the Court already found the allegations concerning the two human resources employees in California to be insufficient. These allegations do not allege that either California employee actually participated in the decision to terminate MacKinnon. To the contrary, as noted above, all MacKinnon alleges is that he "communicated" with them after his termination, and that one of them "looked into [his] termination and confirmed that he was being terminated for cause." TAC ¶ 35.

New to the TAC are allegations that MacKinnon's termination letter "was drafted and sent from Defendants' offices in California," *id.* ¶ 30; that his "final check was sent to him from Defendants' offices in California," *id.* ¶ 31; and that "the only Human Resources employees with whom Plaintiff had any contact were located in California," *id.* ¶ 32. Like

the prior allegations concerning the two California human resources employees, these allegations also fail to allege that there was any conduct in California related to the decision to fire MacKinnon, as opposed to administrative support once that decision had been made. MacKinnon has cited no authority that such administrative actions constitute tortious conduct.

Accordingly, the Court GRANTS Defendants' motion to dismiss MacKinnon's FEHA, UCL, and California wrongful termination claims for failure to allege tortious conduct in California. MacKinnon has had multiple opportunities to amend the complaint and has failed to do so adequately, despite being advised by this Court of specific deficiencies when it dismissed the second amended complaint. The Court therefore finds that leave to amend would be futile, and dismissal of these claims is with prejudice.

## II. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Next, the Court previously dismissed MacKinnon's claims for breach of contract and breach of the implied covenant of good faith and fair dealing from the SAC, which alleged that, on November 11, 2014, the CEO of the company told "Lifesize employees that they would be provided ownership in LIFESIZE in the form of restricted stock units by December 31, 2014." SAC ¶ 19. The SAC further alleged that "Defendants' statements that Plaintiff would receive stock in LifeSize, Inc. if he continued to work for Defendants constituted an offer, which Plaintiff accepted by performance, creating a binding implied contract." *Id.* ¶ 37. The Court found these allegations insufficient to state the existence of a contract because they failed, for example, to allege how many stock units MacKinnon was to receive or how long he had to work to receive them. *See Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 552 (N.D. Cal. 2012) ("[A] contract is void and unenforceable where [it] is so uncertain and indefinite that the intention of the parties on material questions cannot be ascertained.") (citing *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993)).

1      The TAC now contains an allegation that "Plaintiff was deprived of receiving at
2  least 600 Restricted Stock Units ('RSU') because of his wrongful termination.  Plaintiff
3  was to have 300 RSUs vest in 2015, with an additional 300 RSUs vest no later than
4  November 2016."  TAC ¶ 56.  The TAC carries over the allegation from the SAC that all
5  Lifesize employees were "told . . . that they would be provided ownership in LIFESIZE in
6  the form of restricted stock units by December 31, 2014."  *Id.* ¶ 23.  Thus, MacKinnon
7  alleges that he should have received at least 600 RSUs by December 31, 2014, but that
8  those RSUs would not vest until 2015 and November 2016.  Although Defendants raise
9  serious questions about whether the alleged contract for RSUs was actually created at a
10 company-wide meeting, the Court must accept all material factual allegations as true.
11 Doing so, the Court finds the allegations, despite being far from a model of clarity, to be
12 sufficient to move forward at this early stage of the proceedings.  Defendants' motion to
13 dismiss MacKinnon's breach of contract claim is therefore DENIED.

14     MacKinnon's counsel made clear at oral argument that MacKinnon alleges that he
15 had an agreement not to be terminated until his RSUs vested – i.e., that he had a contract
16 for continued employment until at least November 2016, and that his termination prior to
17 the RSUs' vesting breached the terms of the alleged contract.  This clarification renders
18 superfluous MacKinnon's claim for breach of the implied covenant of good faith and fair
19 dealing, which also rests on the allegation that MacKinnon was terminated prior to the
20 vesting of his RSUs: "[A]lthough any breach of the actual terms of an employment
21 contract also violates the implied covenant, the measure of damages for such a breach
22 remains solely contractual.  Hence, where breach of an actual term is alleged, a separate
23 implied covenant claim, based on the same breach, is superfluous."  *Guz v. Bechtel Nat'l,*
24 *Inc.*, 24 Cal. 4th 317, 327 (2000).  Accordingly, Defendants' motion to dismiss
25 MacKinnon's claim for breach of the implied covenant of good faith and fair dealing is
26 GRANTED with prejudice.
27 //
28 //

5

### III. Defamation

The Court also previously dismissed MacKinnon's defamation claim from the SAC because MacKinnon failed to identify who made any of the alleged defamatory statements, when they were made, or to whom they were made. The SAC alleged that "Defendants, and each of them" published defamatory statements, SAC ¶ 47, including:

> false statements about MACKINNON's work performance, his competence to carry out the duties of his position, that he was to blame for his team not reaching its quota, his professional appearance in that he did not wear appropriate business attire, and his professional conduct, including the false suggestion that his interactions with clients and sales prospects were unprofessional and discourteous like a 'used-car salesman,' and the false suggestion that he was disruptive and talked over colleagues.

*Id.* ¶ 49; *see also id.* ¶ 23 (alleging that "LOGITECH and LIFESIZE employees made false and disparaging remarks to third parties" on these same topics). The SAC further alleged that these statements were made to "third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time." *Id.* ¶ 51. As the Court explained, "although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004). A plaintiff must also "specifically identify who made the statements, when they were made and to whom they were made." *PAI Corp. v. Integrated Sci. Solutions, Inc.*, No. C-06-5349 JSW (JCS), 2007 WL 1229329, at *9 (N.D. Cal. Apr. 25, 2007).

The TAC repeats the above allegations at paragraphs 67 and 69, but – despite being given explicit guidance to provide more specificity – MacKinnon still fails to identify the alleged speakers or audience or when the statements were allegedly made. The Court therefore GRANTS Defendants' motion to dismiss these claims with prejudice.

The TAC contains two additional defamation allegations that are more detailed. One of these is that "LIFESIZE Sales Director Eric Tuttle contacted David Kuklinski, a former LIFESIZE employee, and stated the firings – including the termination of

Plaintiff's employment – were 'all about performance. If you didn't hit your numbers in the last 12 months you were let go.'" *Id.* ¶ 64. MacKinnon contends that this was false because he "did hit his numbers in the 12 months prior to his termination, and was praised for doing so shortly before he was terminated." *Id.* However, he failed to respond to Defendants' argument – and therefore concedes – that this alleged personal statement cannot state a claim against Defendants because it was not made within the scope of the alleged speaker's employment. Accordingly, Defendants' motion to dismiss is GRANTED with prejudice as to this allegation.

The second additional allegation to the TAC does withstand Defendants' motion to dismiss: that Matt Collier, a Vice President at Lifesize, emailed the entire Americas Sales Team, with copies to the Executive Staff and two employees from Lifesize Human Resources, on or around January 2, 2015, stating that the terminations of six people from the sales team, including MacKinnon, were "largely performance based actions," which was allegedly false because MacKinnon had been "recognized multiple times as a top performer." TAC ¶ 62. While evaluations of an employee's performance are often non-actionable statements of opinion, *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970-71 (1993), "performance" in the context of the alleged email, and construed in a light most favorable to MacKinnon, can be read to mean performance in terms of sales numbers. This is objectively measurable, and Defendants conceded at oral argument that objective facts can form the basis of a defamation claim.

Defendants argue that, even if the alleged statement is an actionable statement of fact, the TAC is nonetheless deficient because "an employer's statements to employees regarding the reasons for termination of another employee generally are privileged" due to the employer's and employees' "common interest in protecting the workplace from abuse." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440 (2007); *see also Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (listing elements of a defamation claim, including that the statement be unprivileged). However, as Defendants acknowledge, this common-interest privilege can be overcome by a showing of malice. *E.g.*, Cal. Civ. Code § 47(c)

(applying privilege to communications made "without malice"). "'The malice necessary to defeat a qualified privilege is "actual malice" which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights [citations].'" *Taus*, 40 Cal. 4th at 721 (quoting *Sanborn v. Chronicle Publ'g Co.*, 18 Cal. 3d 406, 413 (1976)). In this case, MacKinnon has sufficiently alleged the latter – that Defendants "lacked reasonable ground for belief in the truth of the publication" – by alleging, for example, that MacKinnon had high sales numbers, *e.g.,* TAC ¶¶ 14, 20 – and that Collier and another Lifesize Vice President even "sent MACKINNON emails congratulating him on his excellent work," *id.* ¶ 33. Thus, Defendants' motion to dismiss is DENIED as to the defamation claim based on the email alleged in paragraph 62 of the TAC.

## IV. Claims Against Defendant Lifesize, Inc.

Finally, the Court previously dismissed without prejudice all claims against Defendant Lifesize, Inc. because the SAC failed to allege any facts in support of the legal conclusion that MacKinnon was employed by both Defendants Logitech and Lifesize. The SAC contained only the following conclusory allegation concerning joint employment: that MacKinnon "was employed in Maryland by LOGITECH and LIFESIZE as joint employers from approximately October 10, 2014 through January 2, 2015." SAC ¶ 4.

In addition to this conclusory allegation, TAC ¶ 4,[1] the TAC also alleges that decisions regarding MacKinnon's employment "were made by executive [sic] and

---

[1] The Court notes some confusion in the TAC over Defendant Lifesize, Inc., and a separate entity, Lifesize Communications, Inc. MacKinnon alleges that "LIFESIZE and LOGITECH shared a corporate reporting structure following LOGITECH's 2009 acquisition of LIFESIZE," TAC ¶ 16, but he earlier alleges that Logitech acquired Lifesize Communications, Inc. – not Lifesize, Inc. – in 2009, *id.* ¶ 4. Lifesize, Inc. is not alleged to have been incorporated until October 10, 2014, *id.* ¶ 3, and it is therefore impossible for Logitech to have acquired Lifesize in 2009, or for Lifesize and Logitech to have shared a corporate reporting structure prior to Lifesize's date of incorporation. MacKinnon's counsel confirmed at oral argument that MacKinnon alleges joint employment by Logitech and Lifesize only from October 2014 until his termination.

supervisors of both LOGITECH and LIFESIZE," TAC ¶ 16; that documents delivered to MacKinnon, "including his total cash compensation for Fiscal Year 2015 were signed by LIFESIZE executives [sic] James Goodyear," *id.* ¶ 17; that "LIFESIZE Vice President Matt Collier made promises to Plaintiff on behalf of both LOGITECH and LIFESIZE regarding Plaintiff's Restricted Stock Units," *id.*; that Plaintiff's termination letter "was signed by LIFESIZE Vice President and Chief Financial Officer Michael Lovell," *id.* ¶ 18; and that "[b]oth LOGITECH and LIFESIZE issued rules and policies to Plaintiff which governed the terms and conditions of his employment," *id.* ¶ 19. The Court finds these additional allegations to be sufficient to allege joint employment at this stage of the proceedings. *See Hibbs-Rines v. Seagate Techs. LLC*, No. C08-05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009) (holding that a plaintiff need not "conclusively establish" joint employment at the pleading stage but must at least allege some facts in support of that legal conclusion). The Court therefore DENIES Defendants' motion to dismiss claims against Defendant Lifesize.

**CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with prejudice as to MacKinnon's claims based on FEHA, UCL, and California wrongful termination; his claim for breach of the implied covenant of good faith and fair dealing; and his defamation claim except as to the email alleged in paragraph 62 of the TAC. It is DENIED in all other respects.

**IT IS SO ORDERED.**

Dated: 05/18/16

_____
THELTON E. HENDERSON
United States District Judge